## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## DAYTON DIVISION

| | |
|---|---|
| TAMMY HAWKINS, MATTHEW SMALBACH, JENNIFER DELMONT, MARIA GREENE, DAVID STEWART, BRADLEY GREEN, NATHAN HOLMAN, and ELLA VALRIE, individually and on behalf of all others similarly situated, | Case No. 3:24-cv-225 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| v. | |
| MYHERITAGE LTD. and MYHERITAGE (USA) INC., | |
| Defendants. | |

## I.      INTRODUCTION

1.      Defendants MyHeritage Ltd. and MyHeritage (USA) Inc. (together, "MyHeritage") own and operate the website www.myheritage.com. MyHeritage used Plaintiffs' and Class members' names and personas to promote paid subscriptions to the MyHeritage website without consent in violation of the right of publicity statutes of Ohio, Ohio Rev. Code § 2741; Illinois, 765 ILCS 1075/1 *et seq.*; Nevada, Nev. Rev. Stat. § 597.770 *et seq.*; South Dakota, S.D.C.L. § 21-64-1 *et seq.*; and Alabama, AL Code § 6-5-770 *et seq.*

2.      Plaintiffs Tammy Hawkins, Matthew Smalbach, Jennifer Delmont, Maria Greene, David Stewart, Bradley Green, Nathan Holman, and Ella Valrie (hereafter, collectively, "Plaintiffs") and the members of the proposed Classes (as defined below) are private individuals who have no relationship with MyHeritage. Nevertheless, MyHeritage has disclosed their full

names, birth dates, and other information including family member names, addresses, phone numbers, and other sensitive information to prospective customers for a commercial purpose without first obtaining their consent.

3.      Plaintiffs bring this case individually and on behalf of others similarly situated, seeking damages, an order enjoining Defendants' ongoing misconduct, and all other relief available at law or equity.

## II.     PARTIES

### A.      Plaintiffs

4.      Plaintiff Tammy Hawkins is a natural person who resides in Troy, Ohio, where she intends to remain.

5.      Plaintiff Matthew Smalbach is a natural person who resides in Chicago, Illinois, where he intends to remain.

6.      Plaintiff Jennifer Delmont is a natural person who resides in Gridley, Illinois, where she intends to remain.

7.      Plaintiff Maria Greene is a natural person who resides in Las Vegas, Nevada, where she intends to remain.

8.      Plaintiff David Stewart is a natural person who resides in Wellington, Nevada, where he intends to remain

9.      Plaintiff Bradley Green is a natural person who resides in North Sioux City, South Dakota, where he intends to remain.

10.     Plaintiff Nathan Holman is a natural person who resides in Sioux Falls, South Dakota, where he intends to remain.

11.     Plaintiff Ella Valrie is a natural person who resides in Birmingham, Alabama, where she intends to remain.

**B.** **Defendants**

12.     Defendant MyHeritage Ltd. is an Israeli business entity with its principal place of business at 3 Ariel Sharon Blvd., 6037606, Or Yehuda, Israel. According to records maintained by the Utah Division of Corporations and Commercial Code, MyHeritage Ltd.'s registered agent in the United States is MyHeritage (USA), Inc., 3098 Executive Parkway Suite 275, Lehi, Utah 84043:



13.     Defendant MyHeritage (USA) Inc. is a Delaware corporation. Its principal place of business is located at 3098 Executive Parkway, Suite 275, Lehi, Utah 84043. MyHeritage (USA)

Inc. also maintains two registered agents, one c/o Vcorp Services, LLC, 108 W. 13th Street, Suite 100, Wilmington, Delaware 19801, and one c/o Vcorp Services, LLC, 1108 E. South Union Avenue, Midvale, Utah, 84047.

14.     According to the Terms and Conditions found on www.myheritage.com, (last updated on June 23, 2024) MyHeritage Ltd. and MyHeritage (USA) Inc. own and operate a group of websites referred to as the MyHeritage Website Group, which includes www.myheritage.com and a sister genealogy website www.geni.com.

15.     In February 2021, non-party Francisco Partners acquired MyHeritage in a deal worth approximately $600 million. Francisco Partners is a private equity firm based in San Francisco, California. As of the date of this filing, three partners of Francisco Partners sit on MyHeritage's Board.

## III.     JURISDICTION AND VENUE

16.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, because the proposed class consists of more than 100 members and the amount in controversy exceeds $5 million.

17.     This Court has personal jurisdiction over the claims of Plaintiffs and the non-named Class members. MyHeritage maintains substantial connections to Ohio, and those connections are closely entwined with the wrongdoing in this case. MyHeritage obtained information regarding Ohio residents (including Plaintiff Tammy Hawkins) and utilized that information for marketing purposes. More specifically, MyHeritage advertises that its database contains 118 collections of

records from Ohio,[1] comprising well in excess of 59 million Ohio-specific records.[2] Even accounting for the fact that some individuals may appear in multiple records, that some are deceased or no longer residents of Ohio, and that the Ohio Class excludes MyHeritage subscribers, the Ohio Class (as defined below) likely comprises millions of Ohioans.

18. Moreover, MyHeritage regularly and specifically targets Ohio-specific records to gather and publish in its collection. Records specific to Ohio collected by MyHeritage include:[3] (i) over 15,063,000 Ohio marriage records from 1789 onwards; (ii) over 6,190,000 Ohio marriage record in a separate collection from 1970-2003; (iii) over 8,039,000 Ohio voter registration records from 1900 onwards; (iv) over 17,235,000 Ohio birth records from 1908 onwards; (v) over 4,604,000 records from 88 Ohio newspapers from 1793-2009; (vi) over 3,700,000 Ohio death records from 1904-1908, 1913-1944, and 1954-1970; (vii) over 1,094,000 Ohio tax records from 1800-1850; (viii) over 679,000 obituary records from Montgomery County sourced from the Dayton Metro Library;[4] (ix) over 112,500 burial records from a cemetery in Dayton;[5] (x) over 848,000 marriage records from Franklin County;[6] (xi) over 386,000 burial records from multiple

---

[1] https://www.myheritage.com/wiki/Ohio#Explore_more_about_Ohio (last visited August 15, 2024).

[2] https://www.myheritage.com/research/category-Ohio/ohio-genealogy-vital-records? (last visited August 15, 2024).

[3] https://www.myheritage.com/research/category-Ohio/ohio-genealogy-vital-records?sac=1 (last visited August 15, 2024).

[4] https://www.myheritage.com/research/collection-20550/ohio-montgomery-county-obituaries (last visited August 15, 2024).

[5] https://www.myheritage.com/research/collection-20756/ohio-montgomery-dayton-burials (last visited August 15, 2024).

[6] https://www.myheritage.com/research/collection-20613/ohio-franklin-county-marriages (last visited August 15, 2024).

cemeteries in Cincinnati;[7] (xii) over 154,000 burial records from cemeteries in Columbus from 1814 onwards;[8] (xiii) and over 384,000 Ohio naturalization records from 1800-1977.

19.     MyHeritage took intellectual property it knew belonged to Ohio residents. By obtaining this information and adding it to its database for commercial purposes, MyHeritage purposefully availed itself of doing business in Ohio.

20.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district.

## IV.     FACTUAL ALLEGATIONS

### A.     MyHeritage Acts for a Commercial Purpose

21.     MyHeritage is an online genealogy platform that enables customers to explore their family history and discover new relatives through its website, www.myheritage.com. MyHeritage advertises its "huge" records database, whereby users can "just search a name" to "uncover more than . . . ever imagined."[9] MyHeritage currently boasts that it has 104 million users.[10]

22.     MyHeritage's business model is based on gathering personal information from various sources, then selling access to that information—its "huge" records database—for a fee via a subscription. As explained in more detail below, MyHeritage uses the personal information it has collected to advertise, sell, and solicit the purchase of its subscription products and services.

---

[7]     https://www.myheritage.com/research/collection-20752/ohio-hamilton-cincinnati-burials; https://www.myheritage.com/research/collection-20707/ohio-hamilton-cincinnati-walnut-hills-cemetery-burials (last visited August 15, 2024).

[8]     https://www.myheritage.com/research/collection-20751/ohio-franklin-columbus-burials     (last visited August 15, 2024).

[9]     https://www.myheritage.com/ (last visited August 15, 2024).

[10]     https://il.linkedin.com/company/myheritage (last visited August 15, 2024).

Sources from which MyHeritage collects personal information include birth records, death records, census and immigration records, and numerous other sources. MyHeritage maintains well over 59 million records from Ohio-specific sources alone.[11]

23.     MyHeritage allows prospective customers to search for information about different people. Specifically, using the website prospective customers can search MyHeritage for individual records using a variety of website filters, such as "First Name," "Last Name," "Year of Birth," "Place," as well as "Life Events" such as "Birth," "Marriage," "Residence," "Military," "Immigration," and others.

24.     After defining their search with selected filters, prospective customers are provided with a list of records about various individuals who may be responsive to the search:

---

[11]     https://www.myheritage.com/research/category-Ohio/ohio-genealogy-vital-records?     (last visited August 15, 2024).



25.     This, however, is merely a limited access preview of individuals' profiles, which MyHeritage uses to showcase the range of data potential customers can potentially access. In order to actually access any one of these records—and thus access MyHeritage's "huge" records database—website users must sign-up for MyHeritage's 14-day free trial. During this free trial, MyHeritage offers prospective customers the ability to explore individual records, family trees, DNA matches, and access personal details such as full names, birthdates, family member names, addresses, phone numbers, and more—which cannot be obtained without signing up. MyHeritage employs this free trial strategy to acquaint potential customers with its product, thereby motivating them to purchase subscriptions.

26.     To sign-up, users are required to provide their full name, email address, and payment information. MyHeritage sells paid access to its database after the free trial period expires. Only once prospective customers finish this process can they gain access to the individual records containing the identifiable information of searched individuals.

27.     MyHeritage entices prospective customers with this 14-day free trial to acquaint and familiarize customers with its products and services, thereby motivating them to purchase subscriptions. MyHeritage thus uses individuals' names as well as their personal, sensitive information—including date of birth, relatives' names, address, and phone number—in order to entice consumers to purchase a paid subscription for comprehensive access to the detailed information available on anybody in its database.

**B.      MyHeritage Violated Plaintiffs' Rights of Publicity**

**1.      Plaintiff Tammy Hawkins**

28.     Plaintiff Tammy Hawkins has no relationship with MyHeritage. Ms. Hawkins has never registered for an account with My Heritage and is not a subscriber of any MyHeritage products or services. Ms. Hawkins is not subject to any Terms and Conditions or any other agreement with MyHeritage.

29.     Ms. Hawkins has not provided consent to MyHeritage, written or otherwise, for the use of her name, photograph, information, and/or likeness, for any purpose.

30.     MyHeritage has never notified, requested consent, or provided compensation to Ms. Hawkins for its appropriation of her identity, photograph, information, and/or likeness.

31.     MyHeritage has and continues to use Ms. Hawkins's name, identity, and likeness, for the commercial purpose of advertising, promoting, and enticing prospective customers to purchase MyHeritage's subscription services and products, by using Ms. Hawkins's name, identity, and likeness in its promotional 14-day free trial. Users of the promotional free trial may

search for, download, and view records in MyHeritage's database, including for that of Ms.

Hawkins:



32.     This record uniquely identifies Tammy Hawkins. Plaintiffs' counsel has redacted

Ms. Hawkins's personal information here, but in the original record that MyHeritage created and

is currently using, this information is plainly visible.

33.     Free trial users receive access to the same record corresponding to Ms. Hawkins that is available to paying users, and MyHeritage's sole purpose in using Ms. Hawkins's name, identity, and likeness in the promotional free 14-day trial is to advertise, sell, and solicit the purchase of paid subscription plans.

34.     Ms. Hawkins has a property interest in her likeness recognized by Ohio statutory law. She has the "right . . . to use [her] persona for a commercial purpose." Ohio Rev. Code § 2741.01(D). By using her name and likeness for profit without permission, MyHeritage violated Ms. Hawkins's property interest and denied her the right to control guaranteed under Ohio law. The violation of these property rights is a recognized form of injury

### 2.     Plaintiff Matthew Smalbach

35.     Plaintiff Matthew Smalbach has no relationship with MyHeritage. Mr. Smalbach has never registered for an account with My Heritage and is not a subscriber of any MyHeritage products or services. Mr. Smalbach is not subject to any Terms and Conditions or any other agreement with MyHeritage.

36.     Mr. Smalbach has not provided consent to MyHeritage, written or otherwise, for the use of his name, photograph, information, and/or likeness, for any purpose.

37.     MyHeritage has never notified, requested consent, or provided compensation to Mr. Smalbach for its appropriation of his identity, photograph, information, and/or likeness.

38.     MyHeritage has and continues to use Mr. Smalbach's name, identity, and likeness, for the commercial purpose of advertising, promoting, and enticing prospective customers to purchase MyHeritage's subscription services and products, by using Mr. Smalbach's name, identity, and likeness in its promotional 14-day free trial. Users of the promotional free trial may search for, download, and view records in MyHeritage's database, including for that of Mr. Smalbach:

11



39.     This record uniquely identifies Matthew Smalbach. Plaintiffs' counsel has redacted Mr. Smalbach's personal information here, but in the original record that MyHeritage created and is currently using, this information is plainly visible.

40.     Free trial users receive access to the same record corresponding to Mr. Smalbach that is available to paying users, and MyHeritage's sole purpose in using Mr. Smalbach's name, identity, and likeness in the promotional free 14-day trial is to advertise, sell, and solicit the purchase of paid subscription plans.

41.     Mr. Smalbach has a property interest in his likeness recognized by Illinois statutory law. He has the "right to control and to choose whether and how to use [his] identity for

commercial purposes. . . ." 765 ILCS 1075/10. By using his name and likeness for profit without permission, MyHeritage violated Mr. Smalbach's property interest and denied him the right to control guaranteed under Illinois law. The violation of these property rights is a recognized form of injury.

### 3. Plaintiff Jennifer Delmont

42. Plaintiff Jennifer Delmont has no relationship with MyHeritage. Ms. Delmont has never registered for an account with My Heritage and is not a subscriber of any MyHeritage products or services. Ms. Delmont is not subject to any Terms and Conditions or any other agreement with MyHeritage.

43. Ms. Delmont has not provided consent to MyHeritage, written or otherwise, for the use of her name, photograph, information, and/or likeness, for any purpose.

44. MyHeritage has never notified, requested consent, or provided compensation to Ms. Delmont for its appropriation of her identity, photograph, information, and/or likeness.

45. MyHeritage has and continues to use Ms. Delmont's name, identity, and likeness, for the commercial purpose of advertising, promoting, and enticing prospective customers to purchase MyHeritage's subscription services and products, by using Ms. Delmont's name, identity, and likeness in its promotional 14-day free trial. Users of the promotional free trial may search for, download, and view records in MyHeritage's database, including for that of Ms. Delmont:



46.     This record uniquely identifies Jennifer Delmont. Plaintiffs' counsel has redacted Ms. Delmont's personal information here, but in the original record that MyHeritage created and is currently using, this information is plainly visible.

47.     Free trial users receive access to the same record corresponding to Ms. Delmont that is available to paying users, and MyHeritage's sole purpose in using Ms. Delmont's name, identity, and likeness in the promotional free 14-day trial is to advertise, sell, and solicit the purchase of paid subscription plans.

48.     Ms. Delmont has a property interest in her likeness recognized by Illinois statutory law. She has the "right to control and to choose whether and how to use [her] identity for commercial purposes. . . ." 765 ILCS 1075/10. By using her name and likeness for profit without permission, MyHeritage violated Ms. Delmont's property interest and denied her the right to control guaranteed under Illinois law. The violation of these property rights is a recognized form of injury.

### 4.     Plaintiff Maria Greene

49.     Plaintiff Maria Greene has no relationship with MyHeritage. Ms. Greene has never registered for an account with My Heritage and is not a subscriber of any MyHeritage products or services. Plaintiff Greene is not subject to any Terms and Conditions or any other agreement with MyHeritage.

50.     Ms. Greene has not provided consent to MyHeritage, written or otherwise, for the use of her name, photograph, information, and/or likeness, for any purpose.

51.     MyHeritage has never notified, requested consent, or provided compensation to Ms. Greene for its appropriation of her identity, photograph, information, and/or likeness.

52.     MyHeritage has and continues to use Ms. Greene's name, identity, and likeness, for the commercial purpose of advertising, promoting, and enticing prospective customers to purchase

MyHeritage's subscription services and products, by using Ms. Greene's name, identity, and likeness in its promotional 14-day free trial. Users of the promotional free trial may search for, download, and view records in MyHeritage's database, including for that of Ms. Greene:



53.    This record uniquely identifies Maria Greene. Plaintiffs' counsel has redacted Ms. Greene's personal information here, but in the original record that MyHeritage created and is currently using, this information is plainly visible.

54.     Free trial users receive access to the same record corresponding to Ms. Greene that is available to paying users, and MyHeritage's sole purpose in using Ms. Greene's name, identity, and likeness in the promotional free 14-day trial is to advertise, sell, and solicit the purchase of paid subscription plans.

55.     Ms. Greene has a property interest in her likeness recognized by Nevada statutory law. She has the "right of publicity in [her] name . . . or likeness." Nev. Rev. Stat. § 597.790(1). By using her name and likeness for profit without permission, MyHeritage violated Ms. Greene's property interest and denied her the right to control guaranteed under Nevada law. The violation of these property rights is a recognized form of injury.

### 5.     Plaintiff David Stewart

56.     Plaintiff David Stewart has no relationship with MyHeritage. Mr. Stewart has never registered for an account with My Heritage and is not a subscriber of any MyHeritage products or services. Mr. Stewart is not subject to any Terms and Conditions or any other agreement with MyHeritage.

57.     Mr. Stewart has not provided consent to MyHeritage, written or otherwise, for the use of his name, photograph, information, and/or likeness, for any purpose.

58.     MyHeritage has never notified, requested consent, or provided compensation to Mr. Stewart for its appropriation of his identity, photograph, information, and/or likeness.

59.     MyHeritage has and continues to use Mr. Stewart's name, identity, and likeness, for the commercial purpose of advertising, promoting, and enticing prospective customers to purchase MyHeritage's subscription services and products, by using Mr. Stewart's name, identity, and likeness in its promotional 14-day free trial. Users of the promotional free trial may search for, download, and view records in MyHeritage's database, including for that of Mr. Stewart:



60.    This record uniquely identifies David Stewart. Plaintiffs' counsel has redacted Mr. Stewart's personal information here, but in the original record that MyHeritage created and is currently using, this information is plainly visible.

61.    Free trial users receive access to the same record corresponding to Mr. Stewart that is available to paying users, and MyHeritage's sole purpose in using Mr. Stewart's name, identity, and likeness in the promotional free 14-day trial is to advertise, sell, and solicit the purchase of paid subscription plans.

62.    Mr. Stewart has a property interest in his likeness recognized by Nevada statutory law. He has the "right of publicity in [his] name . . . or likeness." Nev. Rev. Stat. § 597.790(1). By using his name and likeness for profit without permission, MyHeritage violated Mr. Stewart's property interest and denied him the right to control guaranteed under Nevada law. The violation of these property rights is a recognized form of injury.

### 6.    Plaintiff Bradley Green

63.    Plaintiff Bradley Green has no relationship with MyHeritage. Mr. Green has never registered for an account with My Heritage and is not a subscriber of any MyHeritage products or services. Mr. Green is not subject to any Terms and Conditions or any other agreement with MyHeritage.

64.    Mr. Green has not provided consent to MyHeritage, written or otherwise, for the use of his name, photograph, information, and/or likeness, for any purpose.

65.    MyHeritage has never notified, requested consent, or provided compensation to Mr. Green for its appropriation of his identity, photograph, information, and/or likeness.

66.    MyHeritage has and continues to use Mr. Green's name, identity, and likeness, for the commercial purpose of advertising, promoting, and enticing prospective customers to purchase MyHeritage's subscription services and products, by using Mr. Green's name, identity, and

likeness in its promotional 14-day free trial. Users of the promotional free trial may search for, download, and view records in MyHeritage's database, including for that of Mr. Green:



67.    This record uniquely identifies Bradley Green. Plaintiffs' counsel has redacted Mr.

Green's personal information here, but in the original record that MyHeritage created and is currently using, this information is plainly visible.

68.     Free trial users receive access to the same record corresponding to Mr. Green that is available to paying users, and MyHeritage's sole purpose in using Mr. Green's name, identity, and likeness in the promotional free 14-day trial is to advertise, sell, and solicit the purchase of paid subscription plans.

69.     Mr. Green has a property interest in his likeness recognized by South Dakota statutory law. He has a "property interest in [his] name [and] likeness." S.D.C.L. § 21-64-1(3). By using his name and likeness for profit without permission, MyHeritage violated Mr. Green's property interest and denied him the right to control guaranteed under South Dakota law. The violation of these property rights is a recognized form of injury.

### 7.     Plaintiff Nathan Holman

70.     Plaintiff Nathan Holman has no relationship with MyHeritage. Mr. Holman has never registered for an account with My Heritage and is not a subscriber of any MyHeritage products or services. Mr. Holman is not subject to any Terms and Conditions or any other agreement with MyHeritage.

71.     Mr. Holman has not provided consent to MyHeritage, written or otherwise, for the use of his name, photograph, information, and/or likeness, for any purpose.

72.     MyHeritage has never notified, requested consent, or provided compensation to Mr. Holman for its appropriation of his identity, photograph, information, and/or likeness.

73.     MyHeritage has and continues to use Mr. Holman's name, identity, and likeness, for the commercial purpose of advertising, promoting, and enticing prospective customers to purchase MyHeritage's subscription services and products, by using Mr. Holman's name, identity,

and likeness in its promotional 14-day free trial. Users of the promotional free trial may search for, download, and view records in MyHeritage's database, including for that of Mr. Holman:



74. This record uniquely identifies Nathan Holman. Plaintiffs' counsel has redacted Mr. Holman's personal information here, but in the original record that MyHeritage created and is currently using, this information is plainly visible.

75. Free trial users receive access to the same record corresponding to Mr. Holman that is available to paying users, and MyHeritage's sole purpose in using Mr. Holman's name, identity, and likeness in the promotional free 14-day trial is to advertise, sell, and solicit the purchase of paid subscription plans.

76. Mr. Holman has a property interest in his likeness recognized by South Dakota statutory law. He has a "property interest in [his] name [and] likeness." S.D.C.L. § 21-64-1(3). By using his name and likeness for profit without permission, MyHeritage violated Mr. Holman's property interest and denied him the right to control guaranteed under South Dakota law. The violation of these property rights is a recognized form of injury.

### 8. Plaintiff Ella Valrie

77. Plaintiff Ella Valrie has no relationship with MyHeritage. Ms. Valrie has never registered for an account with My Heritage and is not a subscriber of any MyHeritage products or services. Ms. Valrie is not subject to any Terms and Conditions or any other agreement with MyHeritage.

78. Ms. Valrie has not provided consent to MyHeritage, written or otherwise, for the use of her name, photograph, information, and/or likeness, for any purpose.

79. MyHeritage has never notified, requested consent, or provided compensation to Ms. Valrie for its appropriation of her identity, photograph, information, and/or likeness.

80. MyHeritage has and continues to use Ms. Valrie's name, identity, and likeness, for the commercial purpose of advertising, promoting, and enticing prospective customers to purchase MyHeritage's subscription services and products, by using Ms. Valrie's name, identity, and

likeness in its promotional 14-day free trial. Users of the promotional free trial may search for, download, and view records in MyHeritage's database, including for that of Ms. Valrie:



81. This record uniquely identifies Ella Valrie. Plaintiffs' counsel has redacted Ms. Valrie's personal information here, but in the original record that MyHeritage created and is currently using, this information is plainly visible.

82. Free trial users receive access to the same record corresponding to Ms. Valrie that is available to paying users, and MyHeritage's sole purpose in using Ms. Valrie's name, identity, and likeness in the promotional free 14-day trial is to advertise, sell, and solicit the purchase of paid subscription plans.

83. Ms. Valrie has a property interest in her likeness recognized by Alabama statutory law. She has the "right of publicity in any indicia of [her] identity." AL Code. § 6-5-771. By using her name and likeness for profit without permission, MyHeritage violated Ms. Valrie's property interest and denied her the right to control guaranteed under Alabama law. The violation of these property rights is a recognized form of injury.

## V. CLASS ACTION ALLEGATIONS

84. Pursuant to Fed. R. Civ. P. 23, Plaintiff Tammy Hawkins seeks certification of a class defined as follows ("the Ohio Class"):

> All Ohio residents who are not MyHeritage.com subscribers, who have not voluntarily provided information to MyHeritage, and whose names, photographs, and/or likenesses were included in MyHeritage.com's personal record database from August 16, 2020 through the present.

85. Pursuant to Fed. R. Civ. P. 23, Plaintiffs Matthew Smalbach and Jennifer Delmont seek certification of a class defined as follows ("the Illinois Class"):

> All Illinois residents who are not MyHeritage.com subscribers, who have not voluntarily provided information to MyHeritage, and whose names, photographs, and/or likenesses were included in MyHeritage.com's personal record database from August 16, 2023 through the present.

86. Pursuant to Fed. R. Civ. P. 23, Plaintiffs Maria Greene and David Stewart seek certification of a class defined as follows ("the Nevada Class"):

> All Nevada residents who are not MyHeritage.com subscribers, who have not voluntarily provided information to MyHeritage, and whose names, photographs, and/or likenesses were included in MyHeritage.com's personal record database from August 16, 2020 through the present.

87.     Pursuant to Fed. R. Civ. P. 23, Plaintiffs Bradley Green and Nathan Holman seek certification of a class defined as follows ("the South Dakota Class"):

> All South Dakota residents who are not MyHeritage.com subscribers, who have not voluntarily provided information to MyHeritage, and whose names, photographs, and/or likenesses were included in MyHeritage.com's personal record database from August 16, 2020 through the present.

88.     Pursuant to Fed. R. Civ. P. 23, Plaintiff Ella Valrie seeks certification of a class defined as follows ("the Alabama Class") (collectively "the Classes"):

> All Alabama residents who are not MyHeritage.com subscribers, who have not voluntarily provided information to MyHeritage, and whose names, photographs, and/or likenesses were included in MyHeritage.com's personal record database from August 16, 2022 through the present.

89.     Excluded from each of the Classes are: (a) Defendants and their officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; (b) class counsel and their employees; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

90.     *Ascertainability.* The Classes can be readily identified through Defendants' records. By filtering Defendants' database of personal records to residents of the applicable states for the applicable time period and removing any of Defendants' customers from that list, the Class members may be readily identified.

91.     *Numerosity.* Defendants obtain and stores millions of personal records every year and use a substantial portion of them for marketing purposes. Therefore, there are thousands of Class members, and the Classes are so numerous that individual joinder is impracticable.

92. *Typicality.* Plaintiffs' claims are typical of the Classes they seek to represent. Plaintiffs are residents of implicated states and who never subscribed to MyHeritage.com, yet Defendants used their information for a commercial purpose. Thus, Plaintiffs' claims arise out of the same conduct and are based on the same legal theories as those of the absent Class members.

93. *Adequacy of Class Representative.* Plaintiffs will fairly and adequately protect the interests of the Classes. They are aware of their duties to absent Class members and are determined to faithfully discharge their responsibilities. Plaintiffs' interests are aligned with (and not antagonistic to) the interests of the Classes.

94. *Adequacy of Counsel.* In addition, Plaintiffs have retained counsel with considerable experience in class action and other complex litigation, including data privacy cases. Plaintiffs' counsel have done substantial work in identifying and investigating potential claims in this action, have knowledge of the applicable law, and will devote the time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class.

95. *Commonality and Predominance.* This case presents numerous questions of law and fact with answers common to the Classes that predominate over questions affecting only individual class members. Those common questions include:

     a. Whether MyHeritage's misappropriation of names, birth dates, and other personal information, and use of that information in the advertising techniques described in this Complaint, constitute the use of aspects of individuals' personas for a commercial purpose without previous written consent;

     b. Whether MyHeritage solicited and obtained written consent from the members of the Classes prior to the use of their names, photographs, images, likenesses, distinctive appearances, and personas to promote MyHeritage's products;

     c. Whether MyHeritage's commercial use of aspects of members of the Classes' personas was in connection with any news, public affairs, or sports broadcasts;

     d. Whether MyHeritage's commercial use of aspects of the Class members' personas was willful;

e.   Whether MyHeritage's conduct entitles Class members to punitive or exemplary damages under relevant state laws;

f.   Whether MyHeritage's conduct as described in this Complaint violates common law prohibiting misappropriation of a name or likeness; and

g.   Whether Plaintiff and the Class are entitled to injunctive, declaratory, monetary, and other relief requested in this Complaint.

96.   *Superiority and Manageability.* A class action is superior to individual adjudications because joinder of all Class members is impracticable, would create a risk of inconsistent or varying adjudications, and would impose an enormous burden on the judicial system. The amount-in-controversy for each individual Class member is likely relatively small, which reinforces the superiority of representative litigation. As such, a class action presents far fewer management difficulties than individual adjudications, preserves the resources of the parties and the judiciary, and protects the rights of each class member.

97.   *Injunctive Relief.* The proposed class action may be certified pursuant to Rule 23(b)(2) of the Rules of Civil Procedure. MyHeritage has acted on grounds generally applicable to the proposed Classes, such that final injunctive and declaratory relief is appropriate with respect to the Classes as a whole.

## VI.   CAUSES OF ACTION

### Count 1: Violations of the Ohio Right to Publicity in Individual's Persona Statute
### Ohio Rev. Code § 2741
### On Behalf of the Ohio Class

98.   Plaintiff Tammy Hawkins incorporates by reference paragraphs 1-97.

99.   Plaintiff Hawkins brings this claim individually and on behalf of the members of the Ohio Class.

100.    Ohio's right of publicity statute prohibits the use of "any aspect of an individual's persona for a commercial purpose" unless the person "first obtains the written consent" of the individual. Ohio Rev. Code §§ 2741.02 and 2741.05.

101.    By engaging in the forgoing acts and omissions, Defendants used aspects of Plaintiff Hawkins's and the Ohio Class members' personas, including their names, voices, signatures, photographs, images, likenesses, or distinctive appearances, for a commercial purpose without consent. These aspects of Plaintiff's and Ohio Class members' personas have commercial value, as evidenced by Defendants' use and similar use by other companies.

102.    Each use of a Class members' personality is a separate and distinct violation of Ohio Rev. Code § 2741.02.

103.    Plaintiff and the Ohio Class members are residents of the state of Ohio. *See* Ohio Rev. Code § 2741.03.

104.    Ohio Rev. Code § 2741.07 provides that a person who violates the statute is liable for (1) "[a]ctual damages, including any profits derived from and attributable to the unauthorized use"; (2) "[a]t the election of the plaintiff and in lieu of actual damages, statutory damages in the amount of at least two thousand five hundred dollars and not more than ten thousand dollars"; and (3) "punitive or exemplary damages" if applicable under Ohio Rev. Code § 2315.21. The statute further provides that "[t]he trier of fact shall include any profits derived . . . in calculating the award of actual damages." Ohio Rev. Code § 2741.07.

105.    Because of Defendants' violation of Ohio Rev. Code § 2741, Plaintiff Hawkins and the Ohio Class have suffered injury to their privacy and property rights, and actual damages including actual damages in the amount of the profits Defendants derived from their unauthorized use. Plaintiff Hawkins and Class members have been denied the economic value of their personas,

which Defendants appropriated without compensation. Plaintiff Hawkins and Class members were denied their statutorily protected right to refuse consent and protect their privacy.

106.     Individually and on behalf of the Class, Plaintiff Hawkins seeks statutory damages; actual damages, including Defendants' profits from its misuse; compensatory damages for royalties Defendants failed to pay; restitution, punitive and exemplary damages; the award of attorneys' fees and costs; an injunction prohibiting Defendants' ongoing unauthorized use; and declaratory relief. Plaintiff Hawkins intends to elect between actual and statutory damages at a later stage of the lawsuit, after discovery has revealed the amount of Defendants' profits.

### Count 2: Violations of the Illinois Right of Publicity Act
### 765 ILCS 1075/1 *et seq.*
### On Behalf of the Illinois Class

107.     Plaintiffs Matthew Smalbach and Jennifer Delmont incorporate by reference paragraphs 1-97.

108.     Plaintiffs Smalbach and Delmont bring this claim individually and on behalf of the members of the Illinois Class.

109.     Plaintiffs Smalbach and Delmont and the Illinois Class members were domiciled in and suffered injury in, Illinois.

110.     The Illinois Right of Publicity Act prohibits using a person's name, photograph, image, or likeness for the purpose of advertising or promoting products, merchandise, goods, or services without written consent. *See* 765 ILCS 1075/1, *et seq.*

111.     By engaging in the forgoing acts and omissions, Defendants used aspects of Plaintiffs' and members of the Illinois Class's identities, including but not limited to their names, signatures, photographs, images, likenesses, or voices, for a commercial purpose without consent, in that Defendants included the identities of Plaintiffs Smalbach and Delmont, and of the Illinois Class members, in their database in connection with the offering for sale or sale of paid

subscriptions to MyHeritage or for purposes of advertising or promoting paid subscriptions to MyHeritage. These aspects of Plaintiffs' and the Illinois Class members' personas have commercial value, as evidenced by Defendants' use and similar use by other companies.

112.    Defendants never obtained the consent of Plaintiffs Smalbach or Delmont, or of the Illinois Class members before including their identities in its database. Defendants thus engaged in "commercial purposes" with respect to their identities "without having obtained previous written consent" in direct violation of 765 ILCS 1075/30.

113.    The database subscriptions that Defendants sold and continue to sell constitute "products, merchandise, goods, or services" within the meaning of 765 ILCS 1075/5.

114.    Defendants "use[d]" and continues to "use" the identities of Plaintiffs Smalbach and Delmont, and the Illinois Class members "in connection with the offering for sale or sale of" paid subscriptions to MyHeritage or "for purposes of advertising or promoting" paid subscriptions to MyHeritage.

115.    Because of Defendants' violation of 765 ILCS 1075/1, Plaintiffs and members of the Illinois Class have suffered injury to their privacy and property rights, and actual damages both economic and emotional, including actual damages in the amount of the profits Defendants derived from their unauthorized use. Plaintiffs and Illinois Class members have been denied the economic value of their personas, which Defendants appropriated without compensation. Plaintiffs and Illinois Class members were denied their statutorily protected right to refuse consent and protect their privacy.

116.    Based upon Defendants' violation of the Illinois Right of Publicity Act, Plaintiffs and the Illinois Class members are entitled to (1) an injunction requiring Defendants to cease using Plaintiffs' and members of the Illinois Class's names and any attributes of their identities to

advertise its products and services, (2) the greater of an award of actual damages (including profits derived from the unauthorized use of Plaintiffs' and the Illinois Class members' names and identities) or statutory damages of $1,000 per violation to the members of the Illinois Class, (3) an award of punitive damages, and (4) and award of expenses, costs and reasonable attorneys' fees under 765 ILCS 1075/40-55.

**Count 3: Violation of the Nevada Right of Publicity**
**Nev. Rev. Stat. § 597.770 *et seq.***
**On Behalf of the Nevada Class**

117.    Plaintiffs Maria Greene and David Stewart incorporate by reference paragraphs 1-97.

118.    Plaintiffs Greene and Stewart bring this claim individually and on behalf of the members of the Nevada Class.

119.    Plaintiffs Greene and Stewart and the Nevada Class members were domiciled in and suffered injury in, Nevada.

120.    Nevada's Right of Publicity statute states that "[a]ny commercial use by another of the name … of a person requires the written consent of that person or his or her successor in interest[.]" Nev. Rev. Stat. § 597.790. "Commercial use" includes "the use of the name, voice, signature, photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service." Nev. Rev. Stat. § 597.770.

121.    By engaging in the forgoing acts and omissions, Defendants used aspects of Plaintiffs' and the Nevada Class members' personas, including their names, voices, signatures, photographs or likenesses, for a commercial purpose without consent, in that Defendants included Plaintiff Greene's and Stewart's and the Nevada Class members' names, voices, signatures, photographs or likenesses in its database for the purpose of advertising, selling or soliciting the

purchase of paid subscriptions to MyHeritage. These aspects of Plaintiffs' and Nevada Class members' personas have commercial value, as evidenced by Defendants' use.

122.    Defendants never obtained the consent of Plaintiffs Greene or Stewart or the Nevada Class members before including names, voices, signatures, photographs or likenesses in its database. Defendants thus engaged in "commercial use of the name, voice, signature, photograph or likeness of another by a person, firm or corporation without first having obtained written consent for the use" in direct violation of Nev. Rev. Stat. § 597.810.

123.    The database subscriptions that Defendants sold and continues to sell constitutes a "product, merchandise or goods" within the meaning of Nev. Rev. Stat. § 597.770.

124.    Defendants "use[d]" and continues to "use . . . the name, voice, signature, photograph or likeness" of Plaintiffs Greene and Stewart and the Nevada Class members "for the purposes of advertising, selling or soliciting the purchase" of paid subscriptions to MyHeritage.

125.    Nev. Rev. Stat. § 597.810(1) provides that a person who violates the statute is liable for "[i]njunctive relief to prevent or restrain the unauthorized use" and "(1) [a]ctual damages, but not less than $750; and [e]xemplary or punitive damages, if the trier of fact finds that the Defendants knowingly made use of the name, voice, signature, photograph or likeness of another person without the consent."

126.    Plaintiffs Green and Stewart and members of the Nevada Class have suffered injury to their privacy and property rights, and actual damages, including actual damages in the amount of the profits Defendants derived from their unauthorized use. Plaintiffs Green and Stewart and Nevada Class members have been denied the economic value of their personas, which Defendants appropriated without compensation. Plaintiffs Green and Stewart and Nevada Class members were denied their statutorily protected right to refuse consent and protect their privacy.

127. As such, Plaintiffs Green and Stewart and members of the Nevada Class are entitled to (1) the greater of an award of actual damages or statutory damages of $750 per violation to the members of the Nevada Class; (2) an award of punitive damages, and (3) an injunction requiring Defendants to cease using Plaintiffs' and members of the Nevada Class's names and any attributes of their identities to advertise its products and services.

**Count 4: Unauthorized Commercial Use of Personality's Right of Publicity**
**S.D.C.L. § 21-64-1 *et seq*.**
**On Behalf of the South Dakota Class**

128. Plaintiffs Bradley Green and Nathan Holman incorporate by reference paragraphs 1-97.

129. Plaintiffs Green and Holman bring this claim individually and on behalf of the members of the South Dakota Class.

130. South Dakota's right of publicity statute, Unauthorized Commercial Use of Personality's Right of Publicity, prohibits the use of "any aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for seventy years after the death of the personality without the express written consent of the personality." S.D.C.L. §21-64-2. "Commercial purpose" includes "the use of an aspect of a personality's right of publicity in connection with a product, merchandise, goods, services, or commercial activity[.]" S.D.C.L. § 21-64-1.

131. Plaintiffs Green and Holman and the South Dakota Class members were domiciled in and suffered injury in, South Dakota. They are each a "personality" within the meaning of S.D.C.L. § 21-64-1(2).

132. Plaintiffs Green and Holman and the South Dakota Class members each have a "right of publicity," a property interest, in his or her "name" and "likeness" within the meaning of S.D.C.L. § 21-64-1(3).

133.    By engaging in the foregoing acts and omissions, Defendants used aspects of Plaintiff Green's and Holman's and the South Dakota Class members' personas, including their names, voices, signatures, photographs, images, likenesses, or distinctive appearances, for a commercial purpose without consent. These aspects of Plaintiffs' and South Dakota Class members' personas have commercial value, as evidenced by Defendants' use and similar use by other companies.

134.    Defendants never obtained the consent of Plaintiffs Green or Holman or the South Dakota Class members before including their names, voices, signatures, photographs, images, likenesses, distinctive appearances, gestures, or mannerisms in its database. Defendants thus engaged in the "use" of "aspect[s] of a personality's right of publicity for a commercial purpose", in direct violation of S.D.C.L. § 21-64-2.

135.    S.D.C.L. § 21-64-5 provides that a person who violates the statute is liable for "[t]emporary or permanent injunctive relief" and "[d]amages in the amount of one thousand dollars or the actual damages, including profits derived from the unauthorized use, whichever amount is greater." Additionally, "[i]f the court finds that the violation of § 21-64-2 was knowing, willful, or intentional, treble, but not computed on the Defendants' profits, or punitive damages, as the plaintiff elects."

136.    Plaintiffs Green and Holman and members of the South Dakota Class have suffered injury to their privacy and property rights, and actual damages, including actual damages in the amount of the profits Defendants derived from its unauthorized use. Plaintiffs Green and Holman and South Dakotas Class members have been denied the economic value of their personas, which Defendants appropriated without compensation. Plaintiffs Green and Holman and South Dakota

Class members were denied their statutorily protected right to refuse consent and protect their privacy.

137.    As such, Plaintiffs Green and Holman and members of the South Dakota Class are entitled to (1) the greater of an award of actual damages or statutory damages of $1,000 per violation to the members of the South Dakota Class; (2) an award of punitive or treble damages, and (3) an injunction requiring Defendants to cease using Plaintiffs' and members of the Nevada Class's names and any attributes of their identities to advertise its products and services.

**Count 5: Violation of the Alabama Right of Publicity Act**
**AL Code § 6-5-770 *et seq.***
**On Behalf of the Alabama Class**

138.    Plaintiff Ella Valrie incorporates by reference paragraphs 1-97.

139.    Plaintiff Valrie brings this claim individually and on behalf of the members of the Alabama Class.

140.    Plaintiff Valrie and the Alabama Class members were domiciled in and suffered injury in, Nevada.

141.    Alabama's Right of Publicity Act prohibits "the use of the indicia of identity of a person, on or in products, goods, merchandise, or services entered into commerce in this state, or for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services . . . without consent. . . ."  AL Code. § 6-5-772(a).

142.    Liability under the Alabama Right to Publicity Act is found "without regard as to whether the use is for profit or not for profit." AL Code § 6-5-662(b).

143.    By engaging in the forgoing acts and omissions, Defendants used aspects of Plaintiff Valrie's and the Alabama Class members' indicia of identity, including (but not limited to) their names, signatures, photographs, images, likenesses, voices, or substantially similar imitations of one of these attributes, for a commercial purpose without consent, in that Defendants

included Plaintiff Valrie's and the Alabama Class members' indicia of identity in its database for the purpose of advertising or selling, or soliciting purchases of paid subscriptions to MyHeritage. These aspects of Plaintiff's and Alabama Class members' personas have commercial value, as evidenced by Defendants' use and similar use by other companies.

144. Defendants never obtained the consent of Plaintiff Valrie or the Alabama Class members before including their indicia of identity in its database. Defendants thus engaged in commerce or advertising or selling, or soliciting purchases of, products, goods, merchandise, or services, without consent, in direct violation of AL Code § 6-5-772.

145. The database subscriptions that Defendants sold and continues to sell constitute "products, goods, merchandise, or services" within the meaning of AL Code § 6-5-772.

146. Defendants "use[d]" and "uses" the indicia of identity of Plaintiff Valrie and the Alabama Class members "for purposes of advertising or selling, or soliciting purchases of" paid subscriptions to MyHeritage.

147. Pursuant to AL Code § 6-5-774, a person who violates the statute is entitled to "[s]tatutory damages in the amount of five thousand dollars ($5,000) per an action or compensatory damages, including the Defendants' profits derived from such use;" (2) "[a]ny other damages available under Alabama law, including punitive damages;" and (3) injunctive relief.

148. Plaintiff Valrie and members of the Alabama Class have suffered injury to their privacy and property rights, and actual damages, including actual damages in the amount of the profits Defendants derived from its unauthorized use. Plaintiff Valrie and Alabama Class members have been denied the economic value of their personas, which Defendants appropriated without compensation. Plaintiff Valrie and Alabama Class members were denied their statutorily protected right to refuse consent and protect their privacy.

149.    As such, Plaintiff Valrie and members of the Alabama class are entitled to (1) actual damages, including profits derived from the unauthorized use of Plaintiffs' and the Alabama Class members' names and identities; (2) an award of punitive damages, and (3) an injunction requiring Defendants to cease using Plaintiffs' and members of the Alabama Class's names and any attributes of their identities to advertise their products and services.

## VII.    PRAYER FOR RELIEF

150.    Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

> a.   Certification of the proposed Classes;
>
> b.   Appointment of the undersigned counsel as class counsel;
>
> c.   An award of all damages, including attorneys' fees and reimbursement of litigation expenses, recoverable under applicable law or equity;
>
> d.   Restitution or disgorgement of all ill-gotten gains;
>
> e.   An order enjoining Defendants from engaging in further misconduct; and
>
> f.   Such other relief as the Court deems just and proper.

## VIII.    DEMAND FOR JURY TRIAL

151.    Plaintiffs demand a jury trial on all applicable claims.

Dated: August 16, 2024                    Respectfully submitted,


                                          */s/ Jared W. Connors*
                                          Matthew R. Wilson (72925)
                                          Michael J. Boyle, Jr. (91162)
                                          Jared W. Connors (101451)
                                          MEYER WILSON CO., LPA
                                          305 W. Nationwide Blvd.
                                          Columbus, Ohio 43215
                                          Telephone: (614) 224-6000
                                          Facsimile: (614) 224-6066
                                          Email: mwilson@meyerwilson.com
                                                 mboyle@meyerwilson.com
                                                 jconnors@meyerwilson.com

Brian Levin (*pro hac vice* forthcoming)
Brandon T. Grzandziel (*pro hac vice* forthcoming)
LEVIN LAW, P.A.
2665 South Bayshore Drive, PH2
Miami, FL 33133
Telephone: (305) 402-9050
Facsimile: (305) 676-4443
E-Mail: brian@levinlawpa.com
          brandon@levinlawpa.com


Don Bivens (*pro hac vice* forthcoming)
Teresita T. Mercado (*pro hac vice* forthcoming)
DON BIVENS, PLLC
15169 N. Scottsdale Rd., Suite 205
Scottsdale, AZ 85254
Telephone: (602) 708-1450
E-Mail: don@donbivens.com

*Counsel for Plaintiffs and the Proposed Class*